# STATE OF FLORIDA v OLIVA

## Case No. 85-249 AC (County Court Case No. 37588, 9, 90, 1LW)

Eleventh Judicial Circuit, Appellate Division, Dade County

May 11, 1987

### APPEARANCES OF COUNSEL

**Jim Smith,** Attorney General, and **Richard L. Polin,** Assistant Attorney General, for appellant.

**Fred Droese** for appellee.

Before KAYE, MASTOS, GREENBAUM, JJ.

### OPINION OF THE COURT

PER CURIAM.

The Appellee below was arrested on August 6, 1984, for driving

while under the influence of alcoholic beverages or other controlled substances in violation of Section 316.193, F.S. A reading of his blood alcohol content was obtained by having him blow into a C.M.I. Intoxilizer, Model 4011 ASA. At a hearing on July 1, 1985, the Defendant argued that the Intoxilizer test was not a chemical test under the definition of the then existing HRS rule 10D-42.21 through 10D-42.32. The court below suppressed the results of the Intoxilizer test.

The issue to be determined is whether or not the C.M.I. Intoxilizer, Model 4011 ASA, is in fact a chemical test as defined in House Rule 10D-42.21 through 10D-42.32.

According to HRS Rule 10D-42.24, subsection 5, the C.M.I. Intoxilizer, Model 4011 ASA, is an approved chemical breath testing instrument and defines the operation and preventative maintenance procedures for the use of such instrument in analyzing breath samples. In addition, HRS Rule 10D-42.211 defines devices and instruments as being:

"Any apparatus certified by the department, wherein blood alcohol content is indicated or recorded on a dial, meter, scale or chart activated by a chemical reaction between a sample of breath introduced and appropriate chemicals in a chamber, tube, vessel, *or by a physical change within such apparatus.* The term device shall also be construed to include sampling and other analytical equipment conforming to specifications in methods approved by the department."

It seems obvious from the above, that the machine in question, used in this case to analyze the breath of the Appellee, was, in fact, one of the pieces of equipment approved by the department at the time the test was administered. It also seems obvious that although the test in question analyzes the contents of the sample vial by passing infra-red light through the sample and noting any changes within the sample, rather than by use of mixing of chemicals, that the resultant change in the color of the sample would fall within the meaning of "a physical change within such apparatus" as contained in the definition of 10D-42.21 of the HRS rules.

The Court is aware of decisions in other states which have addressed this issue and agrees with the decisions found in *Gandara v. State*, 661 S.W.2d 749 (Tex. App. 1983) in which the Court said:

"The purpose of the test is to ascertain the chemical content of the breath and scientifically correlate the results to an anticipated

171

chemical content of the blood. The Intoxilizer procedure achieves that purpose despite its use of infra-red light in lieu of reactive chemicals."

The Court is also mindful of the rational contained in *State v. Moore*, 307 A.2d 548 (Delaware 1973), in which the Court said:

"The Defendant seems to contend that the phrase "chemical analysis" means an analysis made with chemicals. However, I gather that the phrase does not have so narrow a meaning. My impression, after hearing the testimony, is that the phrase relates to the examination of the component parts of a substance and includes the determination of the proportion of one component part related to the whole. Thus, the test in question is a "chemical analysis", regardless of the fact the procedure is purely mechanical."

This decision and others throughout the country support the contention that even though infra-red light is merely passed through a vial containing a sample of breath, the purpose of which is to note any physical change occurring within the sample vial, such a procedure is a chemical reaction of the infra-red light upon the elements within the contained sample which results in a change of color if the presence of alcohol is detected. This would seem to suffice as a device approved under the existing HRS Rules and Regulations.

Reversed and remanded.